UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-cv-290-MOC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **APPROXIMATELY $22,908.66 IN UNITED STATES CURRENCY**, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Claimant Tre'von Rutherford's Motion to Dismiss the Government's forfeiture Complaint on the grounds that it fails to support a reasonable belief that the Currency is subject for forfeiture. (Doc. No. 9).

**I.    BACKGROUND**

This is a civil action in rem against approximately $22,908.66 in United States currency seized from Tre'von Rutherford on January 6, 2022, at the Woodspring Suites located at 9420 Statesville Road in Charlotte, North Carolina (the "Currency"). For purposes of the Court's analysis, the following facts alleged in the Government's Complaint are construed in the light most favorable to the Government. See United States v. $50,040 in U.S. Currency, No. C-06-04552, 2007 WL 1176631, at *4 (N.D. Cal. Apr. 20, 2007) ("In other words, does the complaint—read in the light most favorable to the government—allege facts that will support a reasonable belief that the seized currency was more likely than not connected to an illegal drug transaction.") (denying motion to dismiss).

In a domestic violence related shooting, Tre'von Rutherford—in the presence of a nine-

year old child—shot twice into a victim's car while she attempted to drive away, striking it with one bullet. (Doc. 1, Compl. at ¶¶ 8–10). Law enforcement responded and found 61 pills of Alprazolam/Xanax on Rutherford when frisking him for weapons. (Id. at ¶ 11). Video footage of the incident obtain from the hotel showed the child pushing Rutherford (who is wheelchair bound) and carrying two bags. (Id. at ¶ 13). The child then goes off camera carrying the two bags and returns with one. (Id. at ¶ 14).

After CMPD officers canvassed the area, they located a bag tucked under a car registered to Sean Rutherford. (Id. at ¶ 15). Inside the bag, officers located a stolen Glock 22, a stolen Glock 26, 4.02 grams of marijuana, 43 oxycodone pills in a clear plastic bag, and the $22,908.66 in Currency concealed in a sock. (Id. at ¶ 16). The bag also had an ID, social security card, and other documents belonging to Tre'von Rutherford. (Id. at ¶ 19).

The Currency was in denominations of one $2 bill, three $5 bills, five $10 bills, one-hundred-and-eighty-seven $20 bills, one-hundred-and-two $50 dollar bills, and one-hundred-and-forty $100 bills. (Id. at ¶ 17). The Currency's composition and storage in a sock are more consistent with the proceeds of street-level narcotics transactions than with legitimately derived money and/or that withdrawn from a bank. (Id. at ¶ 18).

Rutherford later admitted to the shooting and that he carried a firearm even though he was a convicted felon because he knows people want to kill him and/or get his money. (Id. at ¶¶ 20–21). Rutherford has an extensive criminal history involving firearms and larceny, and he was charged with a variety of state charges related to the underlying incident, including possession of the three types of narcotics. (Id. at ¶¶ 22–23).

**II.    STANDARD OF REVIEW**

A motion to dismiss a forfeiture action for failure to state a claim is governed by Supplemental Rule G(2), which requires a verified complaint to "state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). "The pleading requirements of Supp. R. G(2)(f) are satisfied if the government pleads particular facts demonstrating a "sufficient connection" between the property seized and illegal activity." United States v. $40,000.00 in United States Currency, No. 5:17cv398, 2018 WL 2371098, at *2 (E.D.N.C. May 24, 2018) (citing United States v. Mondragon, 313 F.3d 862, 866 (4th Cir. 2002)).

Congress has provided that "the Government may use evidence gathered after the filing of a complaint for forfeiture" to meet its burden at trial, and also that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. §§ 983(c)(2) & (a)(3)(D); accord Supp. R. G(8)(b)(ii). In all, "[t]he Government need only 'state the circumstances giving rise to the forfeiture claim with sufficient particularity' to allow a claimant to conduct a 'meaningful investigation of the facts and draft a responsive pleading.'" $40,041.20 In U.S. Currency Seized from State Dep't Fed. Credit Union Account No. XXX786, No. DCK 12-1771, 2012 WL 5409753, at *4 (D. Md. Nov. 5, 2012)(quoting Mondragon, 313 F.3d at 867).

## III.  DISCUSSION

Seized currency is subject to forfeiture if it was furnished or intended to be furnished in exchange for a controlled substance, is traceable to such an exchange, or was used or intended to be used to facilitate any drug transaction. 21 U.S.C § 881(a)(6); see also 21 U.S.C. § 841 (unlawful distribute or possess with intent to distribute controlled substances); § 846 (attempt

-3-

Case 3:22-cv-00290-MOC-DSC   Document 14   Filed 10/17/22   Page 3 of 9

and conspiracy). The simple possession of controlled substances (such as the three different types of narcotics found on Rutherford or in his bag) is also federally illegal. See 21 U.S.C § 884.

"Courts rely on a multitude of factors in determining whether the property seized is substantially connected to illegal drug activity." United States v. $119,030.00 in U.S. Currency, 955 F. Supp. 2d 569, 584 (W.D. Va. 2013). The court must "consider the totality of the evidence as a whole and in the appropriate context." United States v. Currency, U.S., $147,900.00, No. 09-1496, 2011 WL 4866473, at *2 (4th Cir. Oct. 14, 2011) (unpublished) (quoting United States v. Funds in the Amount of $30,670.00, 403 F.3d 448, 469 (7th Cir. 2005)). The "aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden." United States v. $67,220.00 in U.S. Currency, 957 F.2d 280, 284 (6th Cir. 1992) (citation omitted).

"The government may rely on circumstantial evidence to establish forfeitability." United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010); see also United States v. $94,200 in U.S. Currency, 1:11cv609, 2012 WL 2885129, at *5 (M.D.N.C. July 13, 2012). "Moreover, [p]roceeds need not be tied to any particular identifiable drug transaction." United States v. $240,100 in U.S. Currency, 1:14cv942, 2017 WL 2303985, at *6 (M.D.N.C. May 25, 2017) (internal quotation omitted). Co-mingled funds are also forfeitable. United States v. $20,560, More or Less in U.S. Currency, 3:08-0892, 2010 WL 3702590, at *3 (S.D. W. Va. Sept. 10, 2010) (government entitled to summary judgment against seized funds even if some were from a legitimate source because the commingling of funds indicated an intent to use them interchangeably in the drug business).

-4-

Case 3:22-cv-00290-MOC-DSC   Document 14   Filed 10/17/22   Page 4 of 9

The Court finds that the Government has met its burden of pleading particular facts demonstrating a "sufficient connection" between the property seized and illegal activity in this case. Here, the Currency was found in a bag with marijuana, oxycodone, and two stolen guns. This alone is sufficient to allege a sufficient connection to drug transactions at the current stage of the case. Additionally, the $22,908.66 in seized Currency is an unusually large sum of cash for anyone to carry consistent with a legitimate purpose, and instead, is probative of a connection to drug trafficking. See United States v. $13,000.00 in U.S. Currency, 858 F. Supp. 2d 1194, 1199 (D. Colo. 2012) (rejecting argument that $13,000 was not a sufficiently large sum to indicate a connection to drug transactions); United States v. $15,400.00 in United States Currency, No. 14-1139, 2016 WL 81230, at *3 (D. Kan. Jan. 7, 2016) ("Courts have found possession of currency in lesser amounts to be sufficiently strong evidence of relation to a drug transaction."); $1,761.00 in U.S. Currency, No. 3:09-cv-814, 2011 WL 4552354, at *7 (M.D. Fla. Sept. 30, 2011) (finding a total of $10,158.00 to be probative evidence the money was connected to narcotics trafficking); United States v. $26,620.00 in U.S. Currency, No. 2:05cv50WCO, 2006 WL 949938, at *7 (N.D. Ga. April 12, 2006) (finding $26,620.00 in cash "an amount far greater than what is carried by most law-abiding citizens").

Next, the Currency's composition and storage in a sock is consistent with cash that involved in drug trafficking. The Currency was in denominations of one $2 bill, three $5 bills, five $10 bills, one-hundred-and-eighty-seven $20 bills, one-hundred-and-two $50 dollar bills, and one-hundred-and-forty $100 bills. See United States v. $36,000.00 in U.S. Currency, No. CV16-6043, 2018 WL 839865, at *6 (C.D. Cal. Feb. 8, 2018) ("Courts generally give special weight to the currency's denominations when the currency is in small denominations, in non-

-5-

Case 3:22-cv-00290-MOC-DSC   Document 14   Filed 10/17/22   Page 5 of 9

uniform bundles, bundled with rubber bands and bundled without bank wrappers.") (internal quotations and alterations omitted); United States v. One Hundred Three Thousand Twenty Five Dollars ($103,025.00) in U.S. Currency, 741 F. Supp. 903, 905 (M.D. Ga. 1990) ("Of particular significance is the nature of the currency itself—the way it was packaged, the mixed denominations of the bills, and the sheer amount of currency consisting of a large number of small bills—which in this court's own experience and consistent with the facts in other cases read by the court, appears to be a common thread running through cases involving controlled substances and the proceeds therefrom."). The fact that the Currency does not appear to have come from a bank and is in denominations consistent with street level narcotics sales (and Rutherford is not known to operate any type of cash business whereby he would be taking in such currency, absent perhaps drug trafficking) supports a reasonable belief that it is connected to drug trafficking.

Similarly, the Currency's storage in cash form in a sock is consistent with illegitimately derived proceeds.[1] As the Fourth Circuit Court of Appeals has noted:

> The concealment of money (in socks and elsewhere) lends to the inference that the money was drug related. The carrying of unusually large amounts of cash can help to establish the link to drug activity . . .

United States v. Puche-Garcia, 230 F.3d 1356, 2000 WL 1288181, at *4 (4th Cir. 2000); see also United States v. $53,743.00 in U.S. Currency, CV-17-43-GF, 2017 WL 6344621, at *2–3 (D. Mont. Dec. 12, 2017) ("Active concealment of a large amount of currency in a garment bag

---

[1] As to Rutherford's contention that Rutherford did not "intentionally conceal the Currency from law enforcement," Doc. 10, p. 5, Rutherford seemingly employed his nine-year-old child to hide the Currency, stolen guns, and drugs under a car to avoid detection by law enforcement (who would obviously and inevitably be responding to Rutherford's shooting). That is intentional and active concealment.

supports a connection to illegal drugs."); see generally United States v. $63,289.00 in U.S. Currency, No. 3:13cv281, 2014 WL 2968555, at *7 (W.D.N.C. July 1, 2014) ("Under contemporary practices and habits, it is abnormal for anyone to keep such a large amount of U.S. currency in their home.").

In addition to its unusual concealment in a sock, the Currency was found in a bag beside two separate types of narcotics and Rutherford had a third on his person at the time of seizure. Currency's close physical proximity to drugs supports a connection to drug trafficking. See United States v. $389,820.00 in United States Currency, 2:16-cv-985, 2019 WL 4935402, at *4 (M.D. Ala. Oct. 4, 2019) ("[I]n a civil forfeiture action, the physical location of the seized currency in relation to illegal narcotics is 'strong circumstantial evidence' that the currency is connected to illegal drug trafficking") (granting summary judgment on, inter alia, currency found in close proximity to drugs or drug paraphernalia); United States v. $10,000.00 in U.S. Currency, 348 F. Supp. 2d 612, 616 (M.D.N.C. 2004) (granting summary judgment when, inter alia, currency stored with drugs and paraphernalia in a safe).

Next, the fact that Rutherford carried two stolen guns and, by his own admission, did so to protect the amount of cash he carried, is probative of the Currency's connection to drug trafficking. See United States v. Hector, No. 19-4957, 2022 WL 402493, at *2 (4th Cir. Feb. 9, 2022) ("It is well established that firearms are 'tools of the trade' in drug trafficking.") (listing authorities); United States v. $114,700.00 in United States Currency, No. 17-cv-452-CMA, 2019 WL 6130804, at *4 (D. Colo. Nov. 19, 2019) ("Therefore, the presence of 'tools of the trade,' such as firearms, increases the likelihood that the defendant currency was associated with drug trafficking."); United States v. $53,743.00 in U.S. Currency, 2017 WL 6344621, at **2–3 ("The

-7-

Complaint alleges that the currency was located near a locked duffel bag that contained loaded semi-automatic weapons. Firearms are generally recognized as 'tools of the trade of those engaged in illegal drug activities and are highly probative in proving criminal intent.' The Complaint alleges that a second locked duffel bag in the trunk contained two bottles of prescription liquid oxycodone in the name of a person who was not a passenger in the Cadillac . . . . The Government's Complaint satisfies the pleading requirements for a civil forfeiture action.").

Rutherford argues that the currency came from legitimate sources and that his explanations for why he was carrying the money around are plausible. After full discovery, the Court or jury may be convinced by Rutherford's legitimate source explanation. Regardless, the Government's allegations support a reasonable belief that there is a sufficient connection to drug trafficking. As the Government notes, to conclude otherwise would run afoul of the statutory prohibitions in 18 U.S.C. §§ 983(c)(2) & (a)(3)(D) (stating that the Government may use evidence gathered after the filing of a forfeiture complaint to meet its burden at trial, and no complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property).

In other words, at this stage, that Rutherford disagrees with the Government's factual allegations, or presents alternative and/or additional facts, is of no legal import. See United States v. One 2015 Dodge Challenger R/T Plus, 3:17cv554, 2018 WL 3543492, at *3 (W.D.N.C. July 23, 2018) ("Here, Claimant's Motion to Dismiss raises factual challenges disputing the claims in the Complaint. Accordingly, Claimant relies on facts outside of the Complaint that, while relevant to the ultimate disposition of this case, are irrelevant for testing the sufficiency of the Government's Complaint at this stage of the litigation."); United States v. Painting Known &

Described as Madonna & Child, No. 14 Civ. 4485(AT), 2015 WL 108416, at *6 (S.D.N.Y. Jan. 6, 2015) (claimant's disagreement with the version of the facts set forth in a forfeiture complaint has no bearing on the merits of her motion to dismiss; at the pleading stage, court is concerned only with the sufficiency of complaint). Thus, to the extent Rutherford's motion seeks to introduce facts outside of the Complaint, the Court will not consider this evidence at this stage of the proceedings. See United States v. $70,990,605, 4 F. Supp. 3d 189, 195–96 n.2 (D.D.C. 2014).

In sum, the Complaint states "sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Supp. R. G(2)(f).

## ORDER

**IT IS, THEREFORE, ORDERED** that Claimant Tre'von Rutherford's Motion to Dismiss, (Doc. No. 9), is **DENIED**.

Signed: October 17, 2022

Max O. Cogburn Jr
United States District Judge

-9-